## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DANA RHEA SABILE,**
**Individually and on behalf of all**
**others similarly situated;**

**CASE NO.:**

  **Plaintiff,**

**JURY TRIAL DEMAND**

**vs.**

**CLASS ACTION**

**MARKETSOURCE INC.**
**(MARYLAND),**

  **Defendant.**

_____/

## <u>PLAINTIFF'S COLLECTIVE ACTION COMPLAINT</u>
## <u>PURSUANT TO §216(b) FLSA AND CLASS</u>
## <u>ACTION COMPLAINT</u>

Plaintiff Dana Rhea E. Sabile, (the "Plaintiff" or "Representative Plaintiff") individually and on behalf of all other similarly situated persons (the "Putative Class"), brings this §216(b) Collective Action and Class Action hybrid lawsuit against Defendant Marketsource Inc. (MARYLAND) for violations of the FLSA and California wage laws for failure to pay overtime wages.

## <u>OVERVIEW</u>

1.  Plaintiff and the proposed Putative Class Members are current and former Account Representatives (Reps) (a.k.a. Territory Account Representatives,

Account Sales Representatives (ASR) or other similar job titles) of the Defendant who were assigned to promote T-Mobile products in retail stores by Marketsource.

2.      Account Representatives were paid on a salary basis and classified as EXEMPT employees up through November, 2016, and thereafter, were reclassified to hourly, non-exempt employees but, as Plaintiff contends, were still not paid a premium for all overtime hours worked, and were underpaid the lawfully required rate.

3.      Account Representatives routinely worked in excess of 40 hours per week, as the job commanded, and with the encouragement, urging and knowledge of management, but even after Defendant's changing of all Account Reps to non-exempt status and payment of some overtime wages, Account Representatives were unable to claim all the overtime hours worked and continued to be permitted to suffer to work off the clock.

4.      Although Marketsource may have paid some overtime compensation to the Account representatives from on or about November 2016 to the present, its procedures and pay practices also precluded Account Representatives from being able to record and report ALL their overtime hours, and encouraged Account Reps to work off the clock.

5.      Marketsource carelessly, recklessly and willfully failed to institute systems in place to track and record all the work hours for Account Representatives

prior to 2016, and even after the change to hourly, non-exempt status on or about November 2016 they willfully continued to avoid instituting an actual, contemporaneous and accurate time tracking system.

6.    Marketsource as well, upon information and belief, has failed to include the Account Representatives' bonuses in the calculation of the regular overtime rates of pay.  By failing to include *all* income earned in the calculation of their 'regular rate', Marketsource underpaid Account Representatives at artificially low overtime rates - withholding millions of dollars in overtime wages.

7.    Further, by underpaying the overtime due and also not paying overtime wages throughout the past 3 to 5 years for account representatives, Marketsource also has breached its obligations to Account Representatives under the company 401(k) Plan by underfunding the individual plans and underfunding the corporate match funding.

8.    Accordingly, Plaintiff brings this action on behalf of herself and all other similarly situated employees to recover unpaid overtime compensation under the Fair Labor Standards Act 29 U.S.C.  §216(b), *et. seq.* (the "FLSA"), and other related monetary damages.

9.    The FLSA §218(a) mandates that when state or local law provide greater labor protections, the state or local law governs. Accordingly Plaintiff also brings this class action for unpaid overtime wages pursuant to Fed. R. Civ. P. Rule

23 *et seq.* and state law claims on behalf of Account Reps who work now or worked in the state of California.

## JURISDICTION

10.    This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

11.    The Court also has federal jurisdiction over the state law claims pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. §1332(d).

12.    The Court also has supplemental jurisdiction over the California state law subclass pursuant to 28 U.S.C. §1367.

13.    This Court has personal Jurisdiction over the Defendant pursuant to OCGA 9-10-91, as Defendant maintains a permanent corporate office in Alpharetta, Georgia from which it transacts business at all times material to this action.

14.    The Court has simultaneous jurisdiction over the Collective Action Allegations and the Class Action Allegations *See Calderone, et. al. v. Scott,* No. 2:14-cv-00519-JES-CM (11th Cir. Sept. 28, 2016)  holding that "A § 216(b) collective action and a state-law Rule 23(b)(3) class action may be maintained in the same proceeding."

## **VENUE**

15.    Venue is proper in this Division under 28 U.S.C. § 1391(b)1, as Plaintiff has brought the claims in the District where Defendant resides.

## **PARTIES**

**PLAINTIFF DANA RHEA SABILE**

16.    Plaintiff is a resident of the state of California, but elects to bring this action in Defendant's home District here in the Northern District of Georgia.

17.    Plaintiff was employed by Defendant as a Territory Account Representative (aka Account Representative or Account Sales Representatives) during the relevant statutory time period working in various geographic locations in California from about September 2014 through December 2017.

18.    Plaintiff routinely worked overtime hours and regularly earned bonuses during the period of time she worked overtime.

19.     Marketsource failed to pay Plaintiff the full amount of the legally required overtime compensation for all her overtime hours.

20.    Initially, Marketsource paid Plaintiff a base salary plus a non-discretionary bonus, based upon a set goal of sales in the stores in her territory, and paid out depending upon the percentage of goal in sales met.  She was treated as EXEMPT from overtime wages, prior to November 2016.

21.    After approximately November 2016, Defendant paid plaintiff on an hourly basis with the same bonus structure, and treated her as Non-Exempt, announcing a switch to Non-Exempt status for all Account Representatives.

22.    Plaintiff routinely worked overtime hours prior to November 2016 in order to fulfill her job duties and requirements, which included substantial travel, visiting retail stores, reporting, phone calls and meetings, scheduling, responding to telephone calls and emails, ongoing training requirements, and time spent reading and committing to memory T mobile products and services.

23.    She was not paid a premium for these overtime hours, and management was aware she was working overtime hours.

24.    After sometime in approximately November 2016, Marketsource continued to not pay Plaintiff for all her overtime hours worked, and willfully underpaid her by not including the value of bonuses in the regular rate calculation and the and overtime rates paid.  She was solely paid time and one half her base hourly rate.

25.    Plaintiff participated in Allegis (Parent Corporation) 401(k) retirement plan, under which Marketsource contributed a matching contribution to Plaintiff's 401k account (up to 6%).

26.    Plaintiff    earned    bonuses    throughout    her    time    with Marketsource.  While she was paid for some overtime hours after November 2016,

Marketsource failed to include the bonuses in the overtime calculation or pay a retro overtime premium when the bonuses were paid.

27.    As a result of Marketsource failure to fully and properly at the lawful rates pay for all overtime hours worked, Plaintiff has suffered damages in the amount of unpaid/underpaid overtime compensation; as well as the amount of Marketsource (ALLEGIS) matching contribution to her 401k plan.

**DEFENDANT MARKETSOURCE INC. (MARYLAND)**

28.    Defendant,    MARKETSOURCE,    INC.    (hereinafter "MARKETSOURCE"), is a Maryland For Profit Corporation with its principal place of business at 7301 Parkway Drive, Hanover, Maryland 21076.

29.    Marketsource maintains a permanent office where Plaintiff, and the class of similarly situated reported to, and where, the CEO works from, located at:    11700 Great Oaks Way, Suite #500, Alpharetta, Georgia, 30022.    Defendant may be served through its registered agent:    Registered Corp. Service Company at 40 Technology Parkway, South, Suite #300, Ben Hill, Norcross Georgia 30092.

30.    All of Plaintiff's pay stubs reflect that her pay and those of the similarly situated were paid from Defendant's Alpharetta offices, and where upon information and belief, all the pay practices complained of were created, instituted and supervised.

31.    Marketsource is Plaintiff's employer as defined in the FLSA, and subject to the FLSA overtime wage requirements.

32.    Although Marketsource employs approximately many thousands of employees in the same and similar job titles, working for various accounts or companies, Plaintiff seeks to recover wages for all similarly situated present and former employees of Defendant Marketsource working on the T- mobile account in retail stores across the U.S.

33.    Marketsource implemented all compensation policies and payroll services through its offices in Alpharetta, Georgia, and this is where Plaintiff and the class of similarly situated ultimately reported to.

34.    During the relevant time period of the 3 years preceding the filing of this Complaint, Defendant created, ratified and implemented the unlawful payment schemes alleged in this complaint.

**FLSA Putative Classes**

35.    Plaintiff and the proposed Putative Class Members were ALL subjected to the identical violations of law under Marketsource common, unlawful pay practice and scheme to evade the FLSA overtime wage requirements.    The classes of similarly situated present and former employees sought to be certified under 29 U.S.C. §216(b) is defined as:

**CLASS A**:

**All persons who were employed by Marketsource Inc., or any other subsidiary or affiliated company of Marketsource as an Account Representative, Territory Account Representative, Account Sales Representative, or any other titled used by Marketsource Inc. to describe the same position working on the T-mobile account at any time from the period of the 3 years preceding the filing of this complaint through the November 2016, or the point to which Marketsource converted the position to hourly, non-exempt, who worked anywhere in the U.S. and its territories.**

**CLASS B:**

**All persons who were employed by Marketsource Inc., or any other subsidiary or affiliated company of Marketsource as an Account Representative, Territory Account Representative, Account Sales Representative, or any other titled used by Marketsource Inc. to describe the same position working on the T-mobile account at any time from the period of November 2016, or the point to which Marketsource converted the position to hourly, non-exempt, to the present, who worked anywhere in the U.S. and its territories.**

36.    Defendant, upon information and belief, has employed over the preceding 3 year relevant class period, and currently employs, T-mobile Account Representatives in numerous states in the U.S.

37.    Plaintiff estimates the size of the class to be in the range of 600 or more, as upon information and belief, Defendant employed 300 Account Representatives at some point in time in the relevant 3 year class period and given turnover in the position, the size may be as large as 600 members.

38.    Given the large number of putative class members, the relatively small weekly damages per member, and the identical nature of the claims, class and collective action certification is appropriate in this matter.

39.    Plaintiff also seeks class certification under Fed. R. Civ. P. 23 pursuant to the Class Action Fairness Act § 28 U.S.C. Section 1332(d) over the California state law claims California Labor Code Sections 510, 1198 for unpaid overtime wages.

**CALIFORNIA CLASS**

40.    Plaintiff seeks to recover overtime wages for the following defined class of similarly situated California class members:

**CLASS I**

**All persons who were employed by MARKETSOURCE INC. (MARYLAND) in the State of California as Account Representatives, Territory Account Representatives, Account Sales Representative or any other titles used by Marketsource to describe the same position at any time from December 28, 2013 through November 2016 or the date Marketsource reclassified the position to non-exempt status;**

**CLASS II**

**All persons who were employed by MARKETSOURCE INC. (MARYLAND) in the State of California as Account Representatives, Territory Account Representatives, Account Sales Representative or any other titles used by Marketsource to describe the same position at any time from November 2016 to the present;**

41.    The number of individuals in the California class is so numerous that joinder of all members is impracticable.  Upon information and belief the classes of California employees is in the range of 100 to 300 persons.

42.    Plaintiff will fairly and adequately protect the interests of the class, is ready and willing to do so, and has retained counsel that is experienced and competent in class action, collective action and employment litigation.

43.    Plaintiff's claims are typical of the members of the proposed classes, as she was employed both prior to and subsequent to the November 2016 reclassification to non-exempt status by Defendant, a change which was affected for all California Account Reps.

44.    Plaintiff has no interests that are contrary to, or in conflict with, the members of the class.

45.    A class action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit. The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the classes to individually seek redress for the wrongs done to them.

46.    The Claims of Plaintiff are identical to those of the California classes, as the pay practices complained of where applicable to all Account Reps in

California, and Defendant treated all as exempt prior to November 2016, and thereafter classified all as hourly non-exempt.

## GENERAL FACTS FOR THE CLASS AND COLLECTIVE ACTIONS

47.    During the periods relevant to this action up through on or about November 2016, Plaintiff and all those similarly situated were employed by Defendant as salaried, exempt Account Representatives who also earned non-discretionary bonuses.

48.    All Account Reps were trained the same way, and trained to perform their job requirements or duties in similar manners according to nationalized and standardized procedures and job requirements set by Marketsource.

49.    Throughout Plaintiff's employment, Defendant provided routine ongoing training which all Account reps were required to adhere to.

50.    Further, Marketsource had standardized employment policies and procedures applicable to all Account Reps.

51.    Marketsource sought uniformity in the job performance of all Account Reps.

52.    Through communications with other account reps, attendance at meetings and training programs and manuals, Defendant demonstrated that all

Account reps no matter what geographic location were expected and required to perform their job duties in similar manners.

53.    Account Reps like Plaintiff worked from their homes and traveled to numerous retail stores including:  Costco, Best Buy, Walmart, and Apple with a T-mobile shirt.

54.    They were required to use their own vehicles, but, their auto insurance and gas expenses were their own, although Defendant did pay for mileage some mileage.

55.    At each retail store, Plaintiff and the class of similarly situated provided support and information to the retail store sales employees, and worked side by side with them when communicating to shoppers in the stores answering questions about T-mobile services.

56.    Plaintiff and the class of similarly situated, did not SELL the telephones to the customers or take orders for their purchases.

57.    Plaintiff and the class of similarly situated likewise did not sell T-mobile telecommunications services or write up orders for new subscription plans for phone or data lines.

58.    The primary job duty of the Account Representative or (ASR) was to provide the customer and the retail store sales associates with information about T-

mobile services and provide education and training to the retail store employees on T-mobile services.

59.     Thus, the primary job duties and function of Plaintiff and the class of similarly situated was promotion of T-mobile services, a traditionally and routinely determined to be a non-exempt position under the FLSA.

60.     The primary job duty of the Account Representative was not to sell and take order for the sales of T-mobile telephones or telecommunication services, and Account Reps did not take and process orders from retail customers.

61.     The Primary job duty of the Account Representatives did not involve the exercise of independent discretion and judgment in matters of significance affecting Marketsource, and thus, does not meet the definition of an administratively exempt employee.

62.     Account Reps did not supervise 2 or more full time employees or the equivalent and fail the executive exemption.

63.     Account Reps primary job duties were not SALES, and they fail the outside sales exemption as again, they did not takes orders for T-mobile products and telecommunications services, as all was handled by the retail store employees.

64.     Defendant only paid mileage for the Account Reps if it exceeded 20 miles, and all lesser mileage reimbursement requests were denied.

65.    Account Reps were instructed to visit each store within their assigned territory 6 times each month for a minimum of an hour.

66.    Prior to November 2016, Plaintiff was paid a base salary and treated as exempt, and Defendant had no system in place to track and record the work hours for Account Reps.

67.    In addition, Plaintiff and all other Account Reps were eligible for a percentage of scale bonus based upon a set goal and assigned maximum bonus which was dependent upon the total retail stores sales performance over a given period of time.

68.    The bonus was not depending upon any sales actually made by the Account Reps, and there was no discretionary adjustment.

69.    In order to meet the visit requirements and matrix of visits, Plaintiff had to routinely leave her house at 6:00am, and sometimes did not even return home sometimes until 10:00pm.

70.    Defendant was aware that given the size territory or stores assigned increasing numbers of stores and distances to travel, that the performance of the job and meeting the visit requirements would necessitate and did in fact require, Account Reps, including Plaintiff to routinely and regularly work greater than 40 hours in each work week.

71.    In addition, Defendant mandated attendance at meetings and viewing of continuous training modules or webinars, aside from the driving, and store visits.

72.    Plaintiff also found it necessary and incidental to her job function to field telephone calls and answer emails while at home, and on weekends.

73.    Plaintiff spent weekends preparing her schedule and mapping and plotting the visits.

74.    Sometime after November 2016, Defendant began a computerized and corporately generated schedule for the week for Account Reps, but prior to this, Plaintiff and the class of similarly situated spent hours planning the schedules.

75.    Even after November 2016, Plaintiff had to spend time mapping out her schedule and assess conflicts and problems, and where necessary seek adjustments.

76.    After November 2016, the overtime not paid may be a small for each person, such that absent a class treatment, many would not likely pursue their individual claims may be worth the time and risks involved, such that class treatment and conditional certification is the best and primary means to recover the millions of dollars in wages that Defendant unlawfully and improperly failed to pay.

77.    Plaintiff would receive telephone calls and emails routinely from the store employees on her days off and on weekends, and, was encouraged and expected by Marketsource to respond.

78.    Defendant advised Account Reps that it expected 40 hours or work time, not including the drive time, and that she was expected to visit 12 to 15 stores each week, anywhere from 1 to 2 hours of time.

79.    When factoring in all the driving time, the reports, the telephone calls, emails, scheduling, training etc., Plaintiff routinely found it necessary to work over 40 hours each week to keep up and meet Marketsource requirements.

80.    Plaintiff and other account reps informed their superiors during meetings that the hours were long and that they were working greater than 8 hours each day and greater than 40 hours in week.

81.    Plaintiff's superior, the Territory Manager warned all reps that the failure to make all their required visits and keep up with reporting would result in discipline, including termination of their employment.

82.    Defendant dangled the bonus as a means to push the account reps to work the overtime hours and to get them to work without being paid for all hours.

83.    Plaintiff and the Account Reps did not have discretion to negotiate prices or offer discounts when in the retail stores.  They were solely an information source and to assist in promoting T Mobile products and services.

84.    The claims under the FLSA may be pursued by those who file "opt-in" consents to this case pursuant to 29 U.S.C. § 216(b).

85.    The claims under the state law subclasses may be pursued by all similarly situated persons who choose not to opt-out of the state law subclass pursuant to Fed. R. Civ.  P. 23.

86.    Upon information and belief, Marketsource engaged in improper overtime compensation policies at least half of the states in the United States and its territories where it employed T-Mobile Account Reps, and thereby adversely impacting upwards of hundreds or more Account Reps.

87.    After November 2016, Plaintiff continued to incur unpaid overtime hours, through weekend phone calls and emails, and scheduling issues and preparing for the day ahead.

88.    After November, 2016, while Defendant did pay overtime wages, it failed to include the non-discretionary bonus in the calculations.

89.    Moreover, after switching Plaintiff and the class of similarly situated Account Reps to hourly, non-exempt employees, Defendant willfully refused to offer to pay for all prior overtime hours incurred, nor did it ever inquire with Plaintiff and the account reps how many hours they had worked in the preceding 3 year period over 40 in a work week.

90.    Defendant thus willfully refused to pay Plaintiff and the class of similarly situated Account Reps the overtime wages due and owing for the years preceding the reclassification.

91.     Accordingly, collective and class action is far superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, many members of the classes likely will not obtain redress of their damages and Defendant will unjustly retain the proceeds from their violations of the FLSA and the applicable California labor laws.

92.     Furthermore, even if any member of the classes could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

93.     There is a well-defined community of interest in the questions of law and fact affecting the classes as a whole. The questions of law and fact common to each of the classes and subclasses which predominate over any questions affecting solely the individual members. Among the common questions  of law and fact are:

> a. Whether Marketsource failed to correctly calculate and pay the proper overtime rates for Account Reps when it did actually pay overtime wages on or after November 2016;
>
> b. Whether Plaintiff and the class of similarly situated were unlawfully denied overtime wages in violation of California state wage laws and the FLSA;

c. Whether Marketsource willfully and recklessly failed to pay overtime compensation to Plaintiff and the Putative Class prior to November 2016;

d. Whether Marketsource acted without good faith in misclassifying Account reps as exempt prior to November 2016, and after this date whether they acted in good faith when they failed to pay for all overtime hours and failed to include the bonus money earned in the overtime rated even when they paid overtime compensation to Plaintiff and the Putative Class; AND

e. Whether Plaintiff and the Putative Class suffered damages, and if so the proper measure of damage, including the underpayment and underfunding of 401k contributions and matching funds.

94.    Plaintiff's claims here are not just typical of the claims of members of the classes, but identical. Plaintiff and member of the California class have sustained damages arising out of Marketsource wrongful, common and unlawful pay policy of under-compensating Account Reps for their overtime wages in the rates paid and in not compensating them for all overtime hours worked.

95.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance.

96.    The nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

97.    Marketsource created, supervised and authorized the unlawful pay practices complained of herein.

98.    The Plaintiff's paystubs reflect a centralized payroll department in Alpharetta Georgia for her and all other Account Reps.

99.    The facts demonstrate that this matter is ripe for Rule 23 class certification.

100.    The allegations herein against Marketsource of willfully refusing to pay overtime prior to November 2016, and thereafter of willfully underpaying overtime compensation  and continued willful off the clock unpaid overtime hours incurred by all California Account Reps, potentially in the range of 90 at any given period of time, and with turnover, 200 or more, show that numerosity is satisfied.

101.    The claims of all Account Reps are identical, with the exception of those pre-November 2016 and those post November 2016.

102.    The Plaintiff in this matter is perfectly capable of representing all other Account Reps because she worked for Marketsource for years prior to the November

2016 reclassification, and has continued to work for Marketsource up through the present.

103.   Plaintiff is ready, willing and able to represent the interests of the putative classes in the FLSA, and consents to join, and is ready willing and able to represent the interests of the California classes.

**COUNT I**
**VIOLATION OF THE FAIR LABOR**
**STANDARDS ACT, 29 U.S.C. §216(b)**

104.   Plaintiff realleges and incorporates all allegations contained in Paragraphs 1 through 103 as if incorporated herein.

105.   At all relevant times, Defendant has been, and continue to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Defendant also, upon information and belief, has revenues exceeding $500,000 annually.

106.   At all relevant times, Defendant employed Plaintiff, and continues to employ Account Reps throughout the United States and its territories.

107.   As stated above, Defendant has had, and continues to have a common, unlawful policy and practice of underpaying overtime compensation to ALL of its Account Reps for hours worked in excess of 40 per week.

108.   First, Defendant willfully, and lacking in a good faith basis under the FLSA, misclassified Plaintiff and the class of similarly situated account reps as EXEMPT from overtime wages prior to November 2016.

109.   Even after reclassifying all Account Reps, including Plaintiff to hourly, non-exempt employees on or about November 2016, Defendant willfully refused to offer to pay and did not pay for all overtime hours incurred by Account Reps prior to this reclassification.

110.   By the very nature of Defendant's examination of time records after November, 2016, Defendant could see that account reps, including Plaintiff were routinely working overtime and thus, easily inferring that they had worked over 40 hours routinely in the preceding 3 years.

111.   Regardless, Defendant was aware even prior to November 2016, that account reps were routinely working overtime hours, and that the position, required routine overtime hours.

112.   After November, 2016, Defendant knew the FLSA required payment of overtime at one and one half times each employees regular rate of pay, and, that the regular rate of pay required the inclusion of BONUSES in the calculations and applicable overtime rates paid to account reps.

113.   Defendant willfully and with reckless disregard for the FLSA, underpaid Plaintiff and the class of similarly situated by not including the bonuses in the overtime paid.

114.   Defendant also permitted Plaintiff and the class of similarly situated to suffer to work off the clock, handling phone calls and emails, and other scheduling duties on the weekends and days off without a system or process to track and record these work hours, despite knowledge that the account reps routinely  incurred and worked these additional hours off the clock.

115.   Management warned Account Reps about working too many overtime hours that it would be detrimental to their careers, such that Plaintiff and the similarly situated account reps would continue to work off the clock hours on the weekends and days off.

116.   Throughout Plaintiff's employment as well, she was routinely unable to take a full meal break, as time was pressing and she was always on a tight schedule.

117.   Plaintiff and the class of similarly situated were not permitted or provided a set 30 minute or 1 hour meal break to be off the clock.  They could not and did not clock in and out for meals.

118.   Defendant failed to properly include the non-discretionary bonuses earned by Plaintiff and the proposed putative classes in the regular rate and overtime

rate calculations as mandated by Section 7e of the FLSA, (29 USC 207e) CFR Sections 208, 209. "Section 7(e) of the Act requires inclusion in the "regular rate" of "all remuneration for employment paid to, or on behalf of, the employee", and includes the bonus monies paid to Plaintiff and the FLSA classes. *See also* 29 C.F.R. §778.118.

119.    Defendant's failure to pay Plaintiff and members of the FLSA Class the proper overtime compensation at rates not less than one and one- half times the correct regular rate of pay for all work performed beyond the 40- hour workweek, is a violation of 29 U.S.C. § 207.

120.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Due to the Defendants' FLSA violations, Plaintiffs, on behalf of themselves and all other similarly situated members of the FLSA Class are entitled to recover from Defendants, the balance of the underpaid overtime compensation, an equal amount as liquidated damages, reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

121.    Defendant does not have and cannot have any "good faith" affirmative defense for their willful failure to pay overtime wages for all hours worked prior to November 2016, especially when they recognized and seem to admit as of that date, that Account Reps are properly classified as non-exempt under the FLSA.

104.    Further, Defendant does not and cannot have any good faith affirmative defenses for the underpayment of overtime wages after November 2016, and permitting account reps to suffer to work off the clock after November 2016.

122.    The willful refusal to pay overtime wages and underpayment of overtime wages resulted in Defendant essentially stealing millions of dollars in overtime wages from the putative class of account reps.

123.    Marketsource failure to properly calculate and pay overtime wages to include the bonuses earned is a fundamental basic requirement of the FLSA for and shows a reckless disregard for the FLSA overtime pay requirements.

124.    Since Defendant did not track and record any of Plaintiff's work hours as required by the FLSA prior to November 2016, and after only tracked some of the work hours, Plaintiff may establish the hours she worked solely by her testimony and the burden of overcoming such testimony shifts to the employer.  See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

## COUNT II
## VIOLATION OF THE 29 CFR PART 516.2 FAILURE TO KEEP ACCURATE AND DAILY AND WEEKLY TIME RECORDS

125.    Plaintiff adopts and incorporates paragraphs 1 through 103 as if fully set forth herein.

126. Defendant willfully failed to accurately and contemporaneously track the work hours of Plaintiff and the class of similarly situated prior to November 2016.

127. The actions of Defendant are a per-se violation of the FLSA and the accompanying regulation of 29 CFR Part 516.2.

128. Further, after November 2016, Defendant continued to willfully violate this time tracking requirement, as it had in place various means but not any dedicated system for time tracking all the hours employees worked as required by this section.

129. As a result of Defendant's violation of the time tracking and time recording requirements of the FLSA and the regulations, Plaintiff and the class of similarly situated were forced to work without being paid for all hours worked and must rely upon their own estimated calculations for the unpaid overtime hours.

130. Since Defendant did not track and record the Plaintiff's work hours, Plaintiff may establish the hours she worked solely by her testimony and the burden of overcoming such testimony shifts to the employer. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

## COUNT III
## VIOLATION OF CALIFORNIA LABOR CODE
## SECTIONS 510 AND 1198 FOR UNPAID
## OVERTIME WAGES

131. Plaintiff realleges and incorporates all allegations contained in Paragraphs 1 through 103 as if incorporated herein.

132.    The foregoing conduct, as alleged, constitutes a violation of California's wage and hour laws, *See* Labor Code, § 510. California law requires employers, such as Defendant, to pay overtime compensation to all non-exempt employees for all hours worked over forty per week, or over eight per day.

133.    The Account Reps working for Marketsource in the State of California were, prior to November 2016, treated and classified by Defendant as exempt employees and not paid for overtime hours worked.

134.    Throughout the California Class 4 year Class Period from December 2013 through November 2016, the California Class members routinely worked in excess of eight hours in a workday and/or forty hours in a workweek, and should have been paid a premium for all such hours.

135.    Moreover, Plaintiff and other members of the class also at times worked in excess of 12 hours in a work day.

136.    During the California Class Period, Defendant underpaid California Class members by failing to pay overtime wages and classifying all California based Account Reps, including Plaintiff, as EXEMPT from overtime wages.

137.    California wage laws follow the FLSA requiring the overtime rates used be at one and one half times the employees' regular rate of pay to include the value of the non-discretionary bonuses earned.

138.   Plaintiff and the class of similarly situated California present and former employees of Marketsource routinely worked overtime hours during the periods of December, 2013 through the reclassifying as non-exempt in November 2016 without being paid a premium for their hours.

139.   Further, Defendant failed to properly track and record the work hours of account reps prior to November 2016.

140.   Even after reclassifying all California Account Reps to non-exempt in November 2016, Defendant willfully failed and refused to pay them for all overtime hours worked in the preceding 4 years.

141.   Defendant also did not provide an accurate and reliable system for Account reps after November 2016 to record and track all their work hours, such as the time at home.

142.   Defendant knew or should have known that Plaintiff and the other account reps had, and were working overtime hours routinely during the period of December 2013 through November 2016.

143.   Defendant maintained a scheme to avoid the overtime pay laws of California and the FLSA through practice of willfully, and without good faith, misclassifying account reps as exempt from overtime wages.

144.   As a direct and proximate result of Defendant's willful, reckless and unlawful conduct, including the failure to track time of the account reps, and failure

to pay a premium for overtime hours worked as set forth herein, the California Class members have sustained damages, including loss of wages for all overtime hours worked on behalf of Defendant in an amounts to be established at trial, prejudgment interest, and costs and attorney's' fees, pursuant to statute and other applicable law.

145.    All California class members are entitled to be paid overtime wages owed at one and one half times their regular rates of pay, plus an equal sum in liquidated damages, prejudgment interest and attorney's fees.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff prays for judgment against Defendant for herself and the classes of similarly situated as follows:

a.  An Order conditionally certifying the FLSA claims as a collective action and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.  For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff and the FLSA Class members and for liquidated damages equal in amount to their unpaid compensation;

c. For an Order finding the actions of Defendant to be willful and applying a 3 year statute of limitations for the FLSA claims;

d. For an order declaring Defendant's unlawful pay practices and misclassification as exempt to be without a good faith basis under the FLSA and awarding liquidated damages;

e. For an Order designating the California state law sub-classes as A Class action pursuant to Fed. R. Civ. P. Rule 23;

f. For an Order appointing Plaintiff as Class representative to represent the interests of the FLSA Class, and the California state law sub-classes';

g. For an order Appointing Plaintiff's counsel as Class Counsel for the Rule 23 California Classes;

h. For an Order awarding attorneys' fees, costs pursuant to the FLSA 216b and

i. For an Order awarding prejudgment interest ;

j. For an order Awarding service award fees to the Plaintiff under the FLSA and California ;

k. For an order awarding Plaintiff and the class of similarly situated the values of all underpaid and underfunded 401k earnings; and

l.  For an Order granting such other and further relief as may be necessary and appropriate in equity.

                              Respectfully submitted,

                              */s/ Mitchell L. Feldman*
                              Mitchell L. Feldman Esq.
                              Georgia Bar No.: 257791
                              **FELDMAN WILLIAMS PLLC**
                              1201 Peachtree Street NW
                              400 Colony Square, suite 200
                              Atlanta, GA 30361
                              Tele: (813) 639-9366
                              Fax: (813) 639-9376
                              **E-mail:**
                              **mitch@feldmanwilliams.com**
                              **Attorney for Plaintiff**
                              ***Attorney for Plaintiff and Classes***

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on December 29th, 2017.

/s/ *Mitchell L. Feldman*
Georgia Bar No.: 257791