# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE OF WAGE AND HOUR CLAIMS

This Settlement Agreement and Release of Wage and Hour Claims (the "Agreement") is made and entered into by and between DANA RHEA SABILE, an individual, on behalf of herself, her spouse, agents, representatives, assigns, heirs, executors, administrators, beneficiaries, and trustees ("SABILE"), and MARKETSOURCE, INC. ("MARKETSOURCE") (collectively the "PARTIES").

WHEREAS, SABILE filed a lawsuit against MARKETSOURCE titled <u>Dana Rhea Sabile v. MarketSource, Inc. (Maryland)</u>, in the United States District Court for the Northern District of Georgia and assigned case number 1:17-cv-05546-SCJ (the "Lawsuit"); and

WHEREAS, in the Lawsuit, SABILE asserts claims under the Fair Labor Standards Act ("FLSA") and California wage-hour laws for purported unpaid wages, missed meal breaks, attorneys' fees, and costs; and

WHEREAS, MARKETSOURCE denies all of SABILE's allegations and claims in the Lawsuit; however, to avoid the costs of protracted litigation and the associated legal costs and expenses, the PARTIES desire to resolve the claims SABILE has brought against MARKETSOURCE in the Lawsuit.

NOW, THEREFORE, in consideration of the mutual covenants and promises each party has made to the other as set forth in this Agreement, SABILE and MARKETSOURCE agree as follows:

**1.     Dismissal Of The Lawsuit.**  The PARTIES agree to immediately seek an order approving the terms of this Agreement and dismissing with prejudice the Lawsuit by filing a joint motion for approval of settlement agreement and dismissal of the lawsuit with the United States District Court for the Northern District of Georgia.

**2.     Waiver And Release Of All Wage And Hour Claims.**  In exchange for the consideration described in Paragraph 6, SABILE irrevocably and unconditionally waives, releases, and forever discharges MARKETSOURCE and its predecessors, successors, all former, current, and future related organizations, companies, divisions, subsidiaries, affiliates, and parents, and collectively, their respective former, current and future directors, officers, employees, agents, representatives, attorneys, fiduciaries, assigns, heirs, executors, administrators, beneficiaries, and trustees (collectively the "RELEASED PARTIES"), from any and all wage and hour claims, charges, complaints, actions, causes of action, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities of any kind, nature, description, or character whatsoever, asserted in or that could have been asserted against any of the RELEASED PARTIES in the Lawsuit, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and/or rest periods, failure to timely pay final wages, failure to furnish accurate wage statements or other notices, and/or failure to keep accurate records (the "RELEASED CLAIMS"). The RELEASED CLAIMS include, but are not limited to, any and all claims for:

- Violation of the FLSA, 29 U.S.C. § 201, et seq., California Business and Professions Code Section 17200, California Private Attorneys General Act, California Labor Code sections 2698 et seq., and all applicable California Wage Order and California Labor Code claims, including California Labor Code sections 201, 201.3, 202, 203, 204, 204b, 204.2, 206, 207, 208, 212, 218.5, 218.6, 221-224, 226, 226.2, 226.3, 226.7, 227-227.5, 510, 512, 551-552, 1174, 1174.5, 1182.12, 1182.13, 1194-1194.3, 1197, 1197.1, 1198, and 2802;

- Violation of any and all local, city, state, or federal laws, statutes, ordinances, executive orders, regulations, common law, or constitutions governing wages and hours of work;

- Damages, interest, penalties, costs, attorneys' fees, equitable relief, or any other types of available recovery relating to any of the RELEASED CLAIMS.

    The Waiver and Release Of All Wage and Hour Claims shall waive all rights and benefits afforded by California Civil Code Section 1542 with respect to the      RELEASED CLAIMS.  Section 1542 provides that

**"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

    This is intended to ensure that SABILE releases, to the greatest extent possible by operation of law, those claims subsumed by the RELEASED CLAIMS.  Thus, the Waiver and Release Of All Wage and Hour Claims encompasses all RELEASED CLAIMS that are presently unknown and is intended and will fully, finally, and forever discharge all RELEASED CLAIMS, whether now asserted or unasserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed or may hereafter exist, which if known, might have affected SABILE's decision to enter into this release.  SABILE shall be deemed to waive, as to the RELEASED CLAIMS, any and all provisions, rights, and benefits conferred by any law of the State of California, any law of the United States, any other state or territory of the United States, any other country, or any state or territory of any other country, or principle of common law or equity, which governs or limits a person's release of unknown claims.

    3.    **Covenant Not To Sue.**  SABILE agrees not to sue any or all of the RELEASED PARTIES in any forum for any claim covered by the waivers and releases in Paragraph 2, except that SABILE may bring a claim to enforce this Agreement.  SABILE also agrees not to participate in any class or collective action against any or all of the RELEASED PARTIES for any claim covered by the waivers and releases in Paragraph 2 and that she will elect to opt out of

2

any lawsuit or action against any of the RELEASED PARTIES pertaining to any of the RELEASED CLAIMS, of which she is involuntarily made a member or participant. If SABILE violates this Agreement by suing the RELEASED PARTIES, other than to enforce this Agreement, SABILE shall be liable to such RELEASED PARTIES as are parties to the lawsuit for their reasonable attorneys' fees and other litigation costs incurred in defending against such a lawsuit. Alternatively, if SABILE sues the RELEASED PARTIES, other than to enforce this Agreement, SABILE may be required, at MARKETSOURCE's option, to return all but One Hundred Dollars and No Cents ($100.00) of the consideration paid to her pursuant to this Agreement.

**4.     Rights And Claims Excluded From Waivers And Releases.** This Agreement does not waive any rights that cannot be waived by law, including SABILE's right to file a charge with an administrative agency and her right to participate in any agency investigation or proceeding. SABILE is waiving, however, any right to recover money in connection with such a charge or investigation. SABILE also is waiving any right to recover money in connection with a charge filed by any other individual or governmental agency regarding any RELEASED CLAIMS.

**5.     Non-Admission Of Liability.** SABILE agrees that MARKETSOURCE does not admit any allegations made against it in any claims, charges, complaints, actions, causes of action, grievances, controversies, disputes, or demands, including the Lawsuit. SABILE also agrees that nothing contained in this Agreement, nor any of the acts taken thereunder, shall be deemed or construed as an admission of liability or of a violation of any applicable law, statute, ordinance, order, regulation, or constitution of any kind.

**6.     Consideration.** In exchange for the promises made by and in consideration for all the terms agreed to by SABILE in this Agreement, MARKETSOURCE agrees to pay Sabile as follows:

(a)     The sum of Four Thousand Nine Hundred Dollars and No Cents ($4,900.00) made payable to SABILE for the asserted and unasserted wage-hour claims in her Lawsuit, fifty percent of which shall be treated as payment for SABILE's alleged unpaid wages, and fifty percent of which shall be treated as payment for SABILE's alleged liquidated damages and/or interest on the purported wages. Applicable statutory deductions, including federal income taxes and Social Security taxes, shall be withheld by MARKETSOURCE from the sum treated as payment for SABILE's alleged unpaid wages, and MARKETSOURCE shall issue a Form W-2 to SABILE in connection with the payment of this sum. MARKETSOURCE shall issue a Form 1099 to SABILE in connection with the payment for SABILE's alleged liquidated damages and/or interest. SABILE agrees to indemnify and hold MARKETSOURCE harmless for any tax liability, penalty, interest, cost, or expense incurred by it as a result of the fact that it did not deduct federal income taxes, Social Security taxes, or other withholdings from the 50% treated as non-wage income, or otherwise treat the entire sum as taxable wages to SABILE. MARKETSOURCE will make the payments described in Paragraph 6(a) within twenty-one (21) days after SABILE and MARKETSOURCE sign this Agreement, SABILE and SABILE's counsel, FELDMAN WILLIAMS PLLC, complete, execute, and

3

submit Forms W-9 to MARKETSOURCE, and the court has dismissed the Lawsuit with prejudice.

(b)  The sum of $6,500.00 as payment for SABILE's attorneys' fees and expenses, made payable to FELDMAN WILLIAMS PLLC. MARKETSOURCE will issue Forms 1099 to FELDMAN WILLIAMS PLLC and SABILE in connection with this payment. MARKETSOURCE will make the payment described in Paragraph 6(b) within ten (10) business days after SABILE and MARKETSOURCE sign this Agreement, SABILE and SABILE's counsel, FELDMAN WILLIAMS PLLC, complete, execute, and submit Forms W-9 to MARKETSOURCE, and the court has dismissed the Lawsuit with prejudice.

**7.    Agreement Not To Publicize.** The PARTIES acknowledge that the court requires them to seek approval of the Agreement. Accordingly, the PARTIES do not include a confidentiality provision in the Agreement. That said, SABILE and her counsel agree that, outside of the PARTIES' joint motion referenced in Paragraph 1 of the Agreement, they will not publicize, announce, or otherwise post information about the Agreement to the public, whether in writing, orally, or electronically (including, for example, through social media or on a website). Additionally, the PARTIES agree that nothing in this Agreement prohibits or restricts SABILE or her counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or governmental authority charged with the enforcement of any laws.

**8.    Other Agreements By SABILE.** SABILE also agrees that:

(a)  she is entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. SABILE has not been coerced, threatened, or intimidated into signing this Agreement;

(b)  she has been advised to consult with, and has in fact consulted with, her lawyers prior to signing this Agreement;

(c)  she is not entitled to any consideration from MARKETSOURCE other than the consideration described in Paragraph 6;

(d)  she is waiving her right to participate in any class or collective action against MARKETSOURCE and/or the other RELEASED PARTIES regarding any of the RELEASED CLAIMS.

**9.    Applicable Law.** This Agreement shall be interpreted under the laws of the State of Georgia without regard to its choice of law provisions.

**10.    Counterparts.** This Agreement may be executed in counterparts, and each executed counterpart shall have the same force and effect as an original instrument, as if all of the parties to all of the counterparts had signed the same instrument. E-mailed or faxed copies of handwritten signatures shall be considered the equivalent of an original signature.

**11.    Entire Agreement.** This Agreement sets forth the entire agreement between SABILE and MARKETSOURCE regarding their settlement of the Lawsuit, and supersedes any other written or oral statements, representations, communications, understandings, and agreements in this respect. No amendment or modification of the terms of this Agreement shall be binding on the PARTIES unless reduced to writing and signed by SABILE and MARKETSOURCE.

**12.    Severability.** SABILE and MARKETSOURCE agree that if any phrase, clause, or provision of this Agreement is declared to be illegal, invalid or unenforceable by a court of competent jurisdiction, such phrase, clause or provision shall be deemed severed from this Agreement, but will not affect any other provisions of this Agreement, which shall otherwise remain in full force and effect. If any phrase, clause, or provision in this Agreement is deemed to be unreasonable, onerous, or unduly restrictive by a court of competent jurisdiction, it shall not be stricken in its entirety and held totally void and unenforceable, but shall remain effective to the maximum extent permissible within reasonable bounds. If any waiver, release, or covenant not to sue set forth in Paragraphs 2-3 is deemed to be illegal, invalid, or unenforceable in whole or in part, MARKETSOURCE's obligations under this Agreement shall be nullified.

*Dana Rhea E. Sabile*

_____
DANA RHEA SABILE

Date: Jun 5, 2018

_____
MARKETSOURCE, INC.

General Counsel
Title

Date: June 12, 2018

5